**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ALISHA SIMONE CLARK,
*an individual*,

Plaintiff,

v.

SYNCHRONY BANK, *a federally chartered savings bank*,

Defendant.
______________________________/

Case No.

**JURY TRIAL DEMANDED**

**COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (TCPA) AND THE FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA)**

## INTRODUCTION

1. This is an action for actual and statutory damages arising from Synchonry Bank's ("Defendant") unlawful debt-collection communications in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §§ 559.72(7) and (9).

2. The TCPA was enacted to protect consumers from uninvited intrusive telephone calls that invade their right to privacy while the FCCPA was enacted to protect consumers from certain abusive tactics by debt collectors.

3. Here, Defendant repeatedly contacted Plaintiff by telephone and text message to collect a delinquent PayPal credit card debt that Plaintiff did not owe. Defendant continued those communications for more than four months despite being informed that it had contacted the wrong person and assuring Plaintiff that her

telephone number would be removed from its records.

4. Defendant's collection efforts included artificial, prerecorded-voice telephone calls, repeated payment demands, and communications representing that Plaintiff was responsible for a delinquent PayPal credit card debt. Plaintiff seeks relief for the resulting invasion of her privacy, unwanted collection activity, and other injuries caused by Defendant's conduct.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's TCPA claim arises under the laws of the United States.

6. This Court has supplemental jurisdiction over Plaintiff's FCCPA claims under 28 U.S.C. § 1367(a) because those claims arise from the same collection communications and form part of the same case or controversy as Plaintiff's federal claim.

7. This Court has personal jurisdiction over Defendant because Defendant conducts business in Florida and directed the collection communications giving rise to this action to Plaintiff in Florida.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Orange Park, Florida, where Plaintiff received Defendant's collection communications.

9. The Jacksonville Division is the appropriate division under Local Rule 1.04(b) because action because this is the division to which the action is most directly connected.

## PARTIES

10. Plaintiff, Alisha Simone Clark, is a natural person residing in Clay County, Florida.

11. At all relevant times, Plaintiff was the subscriber or customary user of the cellular telephone number to which Defendant directed the communications described, below.

12. Defendant, Synchrony Bank, is a federally chartered savings bank with its principal banking office in Draper, Utah, that conducts consumer lending and account-servicing activities in Florida and throughout the United States.

13. Defendant issues and services PayPal credit card accounts, including accounts involving credit extended primarily for personal, family, or household purposes.

14. Defendant is a "person" subject to the TCPA and the FCCPA.

## FACTUAL ALLEGATIONS

15. On June 16, 2026, at approximately 12:06 p.m., Plaintiff received a text message from short code 95806 identifying Synchrony Bank as the sender. Exhibit A.

16. The message concerned a PayPal credit card account and instructed the recipient to make a payment through paypal.com or by calling a telephone number supplied in the message.

17. Plaintiff has never opened or maintained a PayPal credit card account and has never authorized Defendant to contact her to collect a PayPal credit card debt.

18. At approximately 12:12 p.m. that day, Plaintiff responded to Defendant's communication and spoke by telephone with one of Defendant's representatives for approximately eight minutes.

19. During that conversation, Plaintiff identified herself and explained that Defendant had contacted the wrong person.

20. Defendant's representative acknowledged that Defendant was attempting to reach someone other than Plaintiff and assured her that her telephone number would be removed from Defendant's records.

21. Despite that conversation, Defendant continued sending collection text messages to Plaintiff's cellular telephone.

22. Between June 18 and October 27, 2026, Plaintiff received no less than twenty additional text messages concerning the PayPal credit card account.

23. Each message originated from short code 95806, identified Synchrony Bank as the sender, and repeatedly directed Plaintiff to make payments through paypal.com or telephone numbers provided in the messages.

24. On July 7, 2026, Defendant sent Plaintiff a text message stating: "Synchrony Bank. **Your PayPal Credit acct. is past due**." (emphasis added). That message again directed Plaintiff to call 855-820-6680 or make a payment through paypal.com. Exhibit B.

25. By referring to "Your PayPal Credit acct." and directing payment, Defendant conveyed the message recipient that Synchrony was trying to collect a delinquent PayPal credit card debt from the person receiving the text.

26. The PayPal credit card debt Defendant sought to collect was a consumer debt within the meaning of Fla. Stat. § 559.55(6).[1]

27. Despite acknowledging Plaintiff was not responsible for the account, Defendant nevertheless continued sending various payment demands during August, September, and October 2026.

28. In addition to the text messages, Plaintiff received repeated telephone calls from the number (844) 377-4136 concerning the PayPal credit card account.

29. On those occasions where Plaintiff did not answer her, phone, Defendant also left artificial voicemail messages on Plaintiff's cellular telephone concerning the PayPal credit card account.

30. Plaintiff's preserved voicemail history identifies at least twenty messages between June 23 and June 30, 2026, associated with the number (844) 377-4136.

31. Those messages identified Synchrony Bank and referenced PayPal Credit. Several contained substantially identical language and lasted approximately 37 seconds.

32. The voicemail messages included the statement: “This is a message from Synchrony Bank regarding PayPal Credit.”

[1] The PayPal credit card account Defendant sought to collect was a consumer credit account issued by Synchrony Bank. Under Synchrony's PayPal Credit Account Agreement (**Exhibit C**, p.4), such accounts may be used only for personal, family, or household purposes. Accordingly, the obligation Defendant sought to collect arose from a consumer credit account intended exclusively for those purposes and constituted a consumer debt within the meaning of Fla. Stat. § 559.55(6).

33. Even on those occasions when Plaintiff did answer Defendant’s calls, she encountered an automated voice system rather than a live representative.

34. The repeated calls and recorded messages concerned a delinquent PayPal credit card account and were made for the purpose of obtaining payment or contacting the person believed responsible for that obligation.

35. Plaintiff has never provided Defendant with prior express consent to place artificial or prerecorded-voice collection calls to her cellular telephone.

36. Nor has Plaintiff authorized the actual PayPal credit card account holder, whoever that person may be, to provide her telephone number or consent to such calls on her behalf.

37. On October 28, 2026, after receiving another automated collection call, Plaintiff called Defendant again in an attempt to stop the debt collection calls.

38. Plaintiff spent not less than ten minutes navigating Defendant's automated telephone system and repeatedly requesting a live representative before reaching someone who could address her complaint.

39. Plaintiff again explained that Defendant was contacting the wrong person and demanded that her number be removed from its collection records.

40. By that time, Defendant had been continually contacting Plaintiff for more than four months after its original assurance that the calls would stop.

41. Defendant's continued collection activity required Plaintiff to spend time attempting to correct the mistake and stop communications concerning an account she had never maintained.

42. The repeated telephone calls, voicemails, and collection text messages interrupted Plaintiff's use and enjoyment of her cellular telephone and intruded upon her privacy.

43. Plaintiff experienced frustration, annoyance, and emotional distress as a result of Defendant's continued efforts to collect an obligation she did not owe.

**ARTICLE III STANDING**

44. After Defendant acknowledged that it had contacted the wrong person and assured Plaintiff that it would remove her number, Defendant continued calling her cellular telephone to collect the PayPal credit card debt.

45. Plaintiff answered several of the calls, during which she encountered an automated voice, and Defendant left automated voicemails when she did not answer. These unwanted calls and voicemails intruded upon Plaintiff’s privacy and disrupted her use of her telephone.

46. After receiving yet another automated collection call on October 28, 2026, Plaintiff called Defendant again, wasting not less than ten minutes attempting to navigate Defendant’s automated system before reaching a representative.

47. Defendant repeatedly demanded that Plaintiff pay a debt she did not owe.

48. The repeated calls and payment demands intruded upon Plaintiff’s privacy, caused her frustration and annoyance, and made her fear that Defendant would escalate its collection efforts against her.

49. The unsolicited calls and text messages with demands for payments of debts that did not belong to Plaintiff caused her harm. In addition to using Plaintiff’s

cellular data, storage, and battery life, she suffered invasion of privacy, aggravation, annoyance, frustration, distraction, forcing her to divert attention away from his work, home life and other activities, inconvenience, wasted time, risk of future harm, and violation of his substantive rights under the TCPA to remain free of unsolicited calls. *Bosley v. A Bradley Hosp. LLC*, No. 25-CV-22336, 2025 WL 2686984, at *4 (S.D. Fla. Sept. 19, 2025) ("The Eleventh Circuit has stated unequivocally that "the receipt of an unwanted text message causes a concrete injury," thereby providing a plaintiff with standing to bring a TCPA claim.") (citing *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023)).

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)**
**Artificial or Prerecorded-Voice Calls Without Prior Express Consent**

50. Plaintiff repeats and incorporates paragraphs 1 through 49 as if fully set forth herein.

51. Section 227(b)(1)(A)(iii) prohibits initiating a call to a telephone number assigned to cellular telephone service through the use of an artificial or prerecorded voice without the called party's prior express consent, except as otherwise authorized by law.

52. At all relevant times, Plaintiff's telephone number was assigned to cellular telephone service.

53. Defendant initiated, or caused to be initiated on its behalf, multiple calls to Plaintiff's cellular telephone using an artificial or prerecorded voice for the purpose of collecting an alleged debt.

54. Plaintiff did not provide prior express consent to receive those calls.

55. On June 16, 2026, Plaintiff informed Defendant that it had contacted the wrong person. Defendant acknowledged the purported error and assured Plaintiff that it would remove her telephone number.

56. Despite acknowledging this alleged oversight, Defendant continued making collection calls to the same cellular telephone number using an artificial or prerecorded voice without Plaintiff's prior express consent. By continuing to make those calls after receiving and acknowledging Plaintiff's notice, Defendant knowingly or willfully violated 47 U.S.C. § 227(b)(1)(A)(iii).

57. Defendant was aware, or should have been aware, that Plaintiff never provided consent to receive its calls and text messages. *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) ("The requirement of "willful[ ] or knowing[ ]" conduct requires the violator to know he was performing the conduct that violates the statute.").

58. Accordingly, under 47 U.S.C. § 227(b)(3), Plaintiff seeks $500 for each violation. For each violation the Court finds knowing or willful, Plaintiff requests that the Court exercise its discretion to increase the award to three times the amount otherwise recoverable for that violation.

**COUNT II**
**Violation of the FCCPA, Fla. Stat. § 559.72(7)**
**Harassing and Abusive Collection Communications**

59. Plaintiff repeats and incorporates paragraphs 1 through 49 as if fully set forth herein.

60. Fla. Stat. § 559.72(7) prohibits any willful communication with the alleged debtor with such frequency as can reasonably be expected to harass the alleged debtor, or any other willful conduct which can reasonably be expected to abuse or harass the alleged debtor.

61. In attempting to collect the alleged PayPal credit card debt, Defendant communicated to Plaintiff that she was obligated to pay it by directing payment demands to her, including a message stating that "Your PayPal Credit acct. is past due."

62. Therefore, Plaintiff is a "debtor" under Fla. Stat. § 559.55(8) because Defendant treated her as obligated to pay the alleged debt, even though she denies owing it.

63. Defendant communicated with Plaintiff with such frequency as to constitute harassment. After Plaintiff told Defendant on June 16, 2026, that it had contacted the wrong person, and Defendant assured her that it would remove her number, Defendant continued its collection communications through October 2026. Those communications included approximately twenty text messages, repeated telephone calls, and at least seven voicemails between June 23 and June 30, 2026.

64. Defendant violated Fla. Stat. § 559.72(7) thereby entitling Plaintiff to relief under Fla. Stat. § 559.77(2), which provides for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff.

## COUNT III

### Violation of the FCCPA, Fla. Stat. § 559.72(9)
### Knowingly Attempting to Enforce a Debt or Legal Right Against Plaintiff That Did Not Exist.

65. Plaintiff repeats and incorporates paragraphs 1 through 49 as if fully set forth herein.

66. Section 559.72(9) prohibits a person collecting a consumer debt from claiming, attempting, or threatening to enforce a debt known not to be legitimate, or asserting a legal right known not to exist.

67. Defendant attempted to collect an allegedly delinquent PayPal credit card debt by repeatedly directing payment demands to Plaintiff's cellular telephone.

68. Defendant's communications included messages instructing Plaintiff to make payment and directing her to paypal.com or telephone numbers provided for that purpose.

69. On July 7, 2026, Defendant expressly represented to Plaintiff that her alleged PayPal credit card account was past due, but Plaintiff was not obligated to pay the alleged debt and, in fact, never even had a PayPal credit card account.

70. Defendant knew that Plaintiff was not its intended debtor because Plaintiff had expressly informed Defendant of that fact during their June 16, 2026 telephone conversation.

71. Defendant's representative acknowledged that Defendant was attempting to contact someone other than Plaintiff and assured Plaintiff that her telephone number would be removed.

72. Defendant therefore had actual notice that Plaintiff was not the person responsible for the PayPal Credit obligation.

73. Despite that knowledge, Defendant continued directing payment demands to Plaintiff, including communications representing that the delinquent account belonged to her.

74. By continuing to demand payment from Plaintiff after acknowledging that she was not the account holder, Defendant asserted a right to collect a debt from Plaintiff when no such right existed.

75. Defendant violated Fla. Stat. § 559.72(9), thereby entitling Plaintiff to relief under Fla. Stat. § 559.77(2), which provides for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney’s fees incurred by the plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendant for actual damages, additional statutory damages, reasonable attorney's fees, costs, and such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

76. Plaintiff demands trial by jury on all issues so triable.

Dated: November 19, 2026

Respectfully submitted,

**SCOTT D. OWENS, P.A.**

/s/ Scott D. Owens
Scott D. Owens Esq.
2750 N. 29th Avenue, Suite 209A
Hollywood, Florida 33020
Telephone: (954) 589-0588
Email: scott@scottdowens.com

# Exhibit A



5:01

612

95806

Tue, Jun 16 at 12:06 PM

PayPal Credit courtesy reminder. Make payment. paypal.com. 8443734961. Msg rates may apply. Synchrony Bank. To opt out reply STOP.

Thu, Jun 18 at 3:24 PM

PayPal Credit courtesy reminder. Make payment. paypal.com. 8443734961. Msg rates may apply. Synchrony Bank. To opt out reply STOP.

Tue, Jun 23 at 4:14 PM

PayPal Credit courtesy reminder. Make payment. Pay at paypal.com. 8558206680. Msg rates may apply. Synchrony Bank. To opt out reply STOP.

Thu, Jun 25 at 6:13 PM

Quick heads up. Make a payment at paypal.com or call 8558206680. Msg rates may apply. Synchrony Bank. To opt out reply STOP.

Fri, Jun 26 at 6:12 PM

Get back on track with PayPal Credit. Pay at paypal.com or call

STOP.

Text Message • SMS

# Exhibit B


5:23
608
95806
Mon, Jul 6 at 11:47 AM
Synchrony Bank. Attention Requested. Pay at paypal.com or call 8558206680. Msg rates may apply. To opt out reply STOP.
Tue, Jul 7 at 5:05 PM
Synchrony Bank. Your PayPal Credit acct. is past due. Call 8558206680 or pay at paypal.com. Msg rates may apply. To opt out reply STOP.
Tue, Aug 18 at 3:43 PM
PayPal Credit courtesy reminder. Make payment. paypal.com. 8443734961. Msg rates may apply. Synchrony Bank. To opt out reply STOP.
Thu, Aug 20 at 10:14 AM
PayPal Credit courtesy reminder. Make payment. paypal.com. 8443734961. Msg rates may apply. Synchrony Bank. To opt out reply STOP.
Tue, Aug 25 at 5:33 PM
PayPal Credit courtesy reminder. Make payment. Pay at paypal.com. 8558206680. Msg rates may apply.
Text Message • SMS

Exhibit C

**FR833282333 PAYPAL CREDIT CARD**
PLCC TC PDF WF1474567A
9/19

# PAYPAL CREDIT ACCOUNT AGREEMENT
## RATES AND FEES TABLE

| Interest Rates and Interest Charges | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases** | The APR for purchases is the prime rate plus 20.74%.<br>This APR will vary with the market based on the Prime Rate. |
| **APR for Cash Advances** | The APR for cash advances is the prime rate plus 20.74%.<br>This APR will vary with the market based on the Prime Rate. |
| **Paying Interest** | Your due date is at least 25 days after the close of each billing cycle. We will not charge you any interest on non-promotional transactions if you pay your entire balance by the due date each month. We will begin charging interest on promotional purchases on the purchase date. |
| **Minimum Interest Charge** | If you are charged interest, the charge will be no less than $2.00. |

| Fees | |
|---|---|
| **Annual Fee** | **None.** |
| **Penalty Fees** | |
| • Late Payment | Up to **$39**. |
| • Returned Payment | Up to **$27**. |

| | |
|---|---|
| **How We Will Calculate Your Balance** | We use a method called "average daily balance" (including new purchases and cash advances). See the Account Agreement below for more details. |

Federal law requires the Lender to obtain, verify, and record information that identifies you when you open an account. The Lender will use your name, address, date of birth, and other information for this purpose.

## TYPES OF TRANSACTIONS

You may use your account to make purchases (standard and promotional) by choosing PayPal Credit when you make a purchase from a merchant at a website, by telephone, or at another authorized location. You may also use your account to get cash advances. These types of transactions are further explained below.

| NON-PROMOTIONAL TRANSACTIONS | |
|---|---|
| **Standard Purchases** | Standard purchases are non-promotional purchases or are purchases that are not otherwise subject to promotional repayment terms and/or APRs. |
| **Cash Advances** | Cash advances are extensions of credit made on the account when you choose PayPal Credit to Send Money. Send Money is your ability to make payments to third parties using PayPal, Inc.'s services, including in connection with: (i) a purchase of goods or services; or, (ii) a transfer of money to friends or family members (not to or from a business) without a purchase. You may not use the cash advance feature to Send Money to yourself. The cost of the cash advance may include both the amount sent and any fee charged by and paid to PayPal, Inc. for facilitating a Send Money transaction. We have the right to decline cash advance transactions for any reason permitted by applicable law, including if fraudulent or high-risk behavior is suspected. |

At times, we may offer promotional financing for certain transactions, and the terms of this Agreement apply to any promotional financing. Regular account terms apply to non-promotional purchases and, after the promotion ends, to promotional purchases. Below is a description of certain promotional financing that may be offered on purchases. These promotional offers may not be available at all times for all purchases. Please see any promotional advertising or other disclosures provided to you for the full terms of any promotional offer. Offers may be subject to credit approval.

| PROMOTIONAL PURCHASES - DEFERRED INTEREST PURCHASES | |
|---|---|
| **No Interest if Paid in Full in 6 Months**<br><br>**No Interest if Paid in Full in 12 Months** | For each deferred interest purchase, if the deferred interest purchase balance is not paid in full within the promotional period, interest will be imposed from the date of purchase at the variable purchase APR that applies to your account when the deferred interest purchase is made.<br><br>At the time your account is opened, the variable purchase APR is **25.99%**.<br><br>Your purchase APR will vary with the market based on the prime rate.<br><br>If you pay the balance on a deferred interest purchase in full within the applicable promotional period, we will not charge any interest for that purchase. Any remaining balance at the end of the promotional period will be charged interest at the variable purchase APR that applies to your account from the date of the purchase. Minimum monthly payments are required. |

| PROMOTIONAL PURCHASES - EASY PAYMENTS PURCHASES | |
|---|---|
| **Easy Payments Purchases** | For each qualifying Easy Payments purchase, either interest will be assessed on the purchase at a reduced APR (which may be referred to as a Financed Easy Payments purchase) or no interest will be assessed. A monthly payment will be due as described in the Minimum Payment Calculation section. We may offer this as the only method you can use to make a purchase from a merchant, or as an option to the standard purchase and/or deferred interest purchase method. Easy Payments purchases will be subject to the terms offered at the time of the transaction by the merchant. |

## RATES, FEES AND PAYMENT INFORMATION

### RATES

You agree to pay interest on the outstanding balance of this account until paid in full, as applicable. Interest may be calculated differently depending on the type of transaction.

| HOW INTEREST IS CALCULATED | |
|---|---|
| **Your Interest Rate** | We use a daily rate to calculate the interest on the balance on your account each day. The daily rate is the applicable APR times 1/365. Interest will be imposed in amounts or at rates not in excess of those permitted by applicable law. The APR for purchases and cash advances is the prime rate plus 20.74%. As of September 1, 2019, the daily rate for purchases and cash advances is 0.0712054% (APR 25.99%). However, if we have disclosed a promotional rate at the time we made a promotional offer, we will calculate interest on balances subject to that promotional offer using the applicable promotional financing rate.<br><br>**Daily Rates May Vary.** The APRs and the daily rates on your account vary with the market based on the prime rate. The prime rate for a billing cycle is the highest bank prime loan rate published in *The Wall Street Journal* in its Money Rates section on the last business day of the calendar month preceding the first day of the billing cycle.<br><br>If the prime rate increases, the daily rates and APRs will increase. As a result, interest, your total minimum payment and the number of payments it would take you to pay off your account balance may increase. We apply any change in rates because of a prime rate change to your entire account balance. A change in the prime rate will take effect on the first day of the first billing cycle after the change. We may select a new interest rate index if the prime rate is not available. |
| **When We Charge Interest** | Generally, we charge interest on your purchases and cash advances from the date you make the purchase or cash advance until you pay the purchase or cash advance in full. See exceptions below.<br><br>• We will not charge you interest during a billing cycle on any non-promotional transactions if:<br>1. You had no balance at the start of the billing cycle; OR<br>2. You had a balance at the start of the billing cycle and you paid that balance in full by the due date in that billing cycle.<br>• We charge interest on promotional purchases and their related fees from the date you make the promotional purchase, where applicable. If you pay the balance on a deferred interest purchase in full within the applicable promotional period, we will not charge any interest for that purchase.<br>• We will credit, as of the start of the billing cycle, any payment you make by the due date that we allocate to non-promotional transactions if:<br>1. You had no balance at the start of the previous billing cycle; OR<br>2. You had a balance at the start of the previous billing cycle and you paid that balance in full by the due date in the previous billing cycle. |

| | |
|---|---|
| **How We Calculate Interest** | We calculate interest on your account for each billing cycle separately for each balance type. A separate average daily balance is calculated for the following balance types, as applicable: standard purchases, cash advances and promotional purchases. See below for how this works.<br>1. **How to get the average daily balance.** We take the starting balance each day, including billed interest and billed fees, add any new charges and adjustments posted that day and subtract any payments or credits (treating any net credit balance as zero). This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. The result is the average daily balance.<br>2. **How to get the interest amount.** We multiply each average daily balance by the number of days in the billing cycle. Then we multiply this by the daily rate that applies. This gives us the interest charges for each balance type.<br>3. **How to get the interest charge for the billing cycle.** We add all the interest charges for all the balance types, to get the interest for the account. |
| **Minimum Interest Charge** | We charge a minimum of $2.00 of interest in any billing cycle in which you owe interest on non-promotional transactions. |

## FEES

You agree to pay the following fees, as applicable.

| **FEES** | |
|---|---|
| **Late Payment Fee** | We will charge this fee for each billing cycle in which we do not receive the minimum payment due on your account on the due date in accordance with the requirements set forth on each billing statement. This fee is equal to:<br>1. $28, if you have paid your minimum payment due by the due date in each of the prior six billing cycles; OR<br>2. $39, if you have failed to pay your minimum payment due by the due date in any one or more of the prior six billing cycles.<br>The late payment fee will never be more than the minimum payment that was due and will not exceed $5.00 if the minimum payment due on your account is less than $28. |
| **Returned Payment Fee** | We will charge this fee, which is sometimes referred to as a “return check fee” or “non-sufficient funds fee,” if any check, other instrument, or electronic payment authorization you provide us in payment on your account, is not honored upon first presentment for any reason, including if the payment is returned by drawee for “not sufficient funds.” We will not charge this fee if the check, instrument or electronic authorization is later honored. This fee is equal to $27; however, it will never be more than the minimum payment due immediately prior to the date on which the payment is returned. |

## MINIMUM PAYMENT CALCULATION

Your minimum payment is calculated as follows.

The sum of:

a. For the new balance shown on your billing statement (excluding any Easy Payments purchase balance), the greater of:

(i) $28, or $39 if you have failed to pay the minimum payment due by the due date in any one or more of the prior six billing cycles; or

(ii) The sum of 1% of such new balance (rounded down to the nearest whole dollar), plus interest (excluding any accrued interest on a deferred interest purchase billed in that billing cycle), late payment fees and returned payment fees charged in the current billing cycle (rounded down to the nearest whole dollar); PLUS

b. Any past due amounts; PLUS

c. Any Easy Payments purchase monthly payment. The monthly payment amount for an Easy Payments purchase will be equal to the Easy Payments purchase amount plus applicable interest divided by the number of months in the applicable promotional period.

Your minimum payment will never be more than your new balance. There is no payment due for a “No Payments + No Interest if paid in full Purchase” prior to its expiration date.

## STANDARD PROVISIONS

| **ABOUT THE CREDIT CARD ACCOUNT AGREEMENT** | |
|---|---|
| **This Agreement** | This is an Agreement between you and Synchrony Bank, 170 Election Road, Suite 125, Draper, UT 84020, for your PayPal Credit open-end (revolving) credit card account that is the subject of this Agreement. By opening or using your account, you agree to the terms of the entire Agreement, and you make the promises it contains by either applying for or accepting an account or making a purchase using PayPal Credit after receipt of this Agreement. The entire Agreement includes this document, including any amendment or addendum thereto, and the application you submitted in connection with the account. These documents replace any other agreement relating to your account that you or we made earlier or at the same time. |
| **Parties To This Agreement** | The person who applied for, opened and/or uses the account may be referred to as “you” or “your.” The Lender, Synchrony Bank, may be referred to as “we,” “us” or “our.” PayPal, Inc., located in San Jose, California, is a payment service provider that consumers and merchants use to make payments to and accept payments from third parties, and is another entity contemplated by this Agreement. |

| | |
|---|---|
| **Changes To This Agreement** | We may change, add or delete terms of this Agreement, including interest rates, fees and charges. |
| **Promotional Financing Offers** | The terms of this Agreement apply to any promotional financing offer. However, any promotional financing terms that are different than the terms in this Agreement will be explained on promotional advertising or other disclosures provided to you. |

| HOW TO USE YOUR ACCOUNT | |
|---|---|
| **Use Of Your Account** | You may use your account only for lawful personal, family or household purposes. You may use your account for the types of transactions explained in this Agreement. You may not use your account to pay amounts you owe us on this account or any other account you have with us. We may charge your account for purchases and cash advances you make, and you authorize us to charge this account for the cost of any purchase or cash advance you or anyone to whom you have given permission to use this account make, using PayPal Credit. |
| **You Promise To Pay** | You promise to pay us for all amounts owed to us under this Agreement. |
| **Your Responsibility** | You may not allow anyone else to use your account. If you do, you will be responsible for paying for all charges resulting from their transactions. |
| **Transaction Limits** | To prevent fraud, we may limit the number or dollar amount of any type of transactions you can make in any particular amount of time. We also may decline any particular charge on your account for any reason. |
| **Credit Limit** | You will be assigned a credit limit (which may also be referred to as a credit line), which is the dollar amount of credit available for you to borrow on your account, of at least $250, that we may increase or decrease from time to time. If we approve a transaction that makes you go over your credit limit, we do not give up any rights under this Agreement and we do not treat it as an increase in your credit limit. However, we may, from time to time, increase your credit limit, including after approval of such a transaction. If you seek to open a new account to make a purchase, you agree that if we identify your existing account, your purchase will be charged to your existing account and a new account will not be opened. |

| HOW AND WHEN TO MAKE PAYMENTS | |
|---|---|
| **When Payments Are Due** | You must pay at least the minimum payment due on your account by the due date of each billing cycle in accordance with the requirements set forth on each billing statement. Payments received after the due date will be credited as of the next day. You may at any time pay, in whole or in part, the total unpaid balance without any additional charge for prepayment. If you have a balance subject to interest, earlier payment may reduce the amount of interest you will pay. We may delay making credit available on your account in the amount of your payment even though we will credit your payment when we receive it. |
| **Payment Options** | You can pay by mail, online or by phone. Your payment must be made in U.S. dollars by physical or electronic check, money order or a similar instrument from a bank located in the United States. |
| **How To Make A Payment** | You must follow the instructions for making payments provided on your billing statement. If you do not, credit of your payment may be delayed up to five days. Your billing statement also explains how information on your check is used. |
| **Payment Allocation** | We will use each payment in the amount of the minimum payment due or less, first to pay billed monthly plan payments on any Easy Payments purchases, then billed interest, then billed fees, then the principal balance, and then any other amounts due. However, if you have a balance on a deferred interest purchase, during both the billing cycle preceding its expiration date and the billing cycle in which such deferred interest purchase expires, we may use the payment, after the amount to pay billed monthly plan payments on any Easy Payments purchases, to pay the balance on such deferred interest purchase(s).<br><br>We will use any amount in excess of the minimum payment due to pay the balances with the highest interest rate, then the next highest interest rate, and so forth. However, during both the billing cycle preceding the expiration date and the billing cycle in which a deferred interest purchase expires, we may use payments first to pay the balance on such deferred interest purchase(s). |

| INFORMATION ABOUT YOU | |
|---|---|
| **Using And Sharing Your Information** | When you applied for an account, you gave us and PayPal, Inc. information about yourself that we could share with each other. PayPal, Inc. will use the information in connection with the credit program and for things like creating and updating its records and offering you special benefits. By making a purchase or requesting a cash advance, you authorize us to share your personal information (including email address) in order to verify your identity, make a credit decision, complete your transaction, service your account, and for any other lawful purpose as set forth in the privacy policy for your account. You authorize merchants you transact with to share your personal information, including email address, with the Lender to use it for any lawful purpose. |
| **Address/Phone Change** | You represent that any phone number that you provide to us belongs to you and/or that you are authorized to provide that number. You also agree to tell us right away if you change your address (mailing or email) or any phone number. |

| | |
|---|---|
| **Consent To Communications** | You consent to us and PayPal, Inc., as well as any other owner or servicer of your account, contacting you through any channel of communication and for any purpose, as permitted by applicable law. For informational, servicing, fraud or collection related communications, you agree that we may use the phone numbers that you provide to us to contact your cellular phone or wireless device with text messages, artificial or prerecorded voice calls, and calls made by an automatic telephone dialing system. Text frequency may vary and may be recurring. This consent applies even if you are charged for the call under your plan. You are responsible for any charges that may be billed to you by your communications carrier when we contact you. Message and data rates may vary. We and any carrier are not liable for delayed or undelivered messages. |
| **Telephone Monitoring** | For quality control, you allow us and/or PayPal, Inc. to listen to and/or record telephone calls between you and us or PayPal, Inc. |
| **Emails** | You consent to us and/or PayPal, Inc. emailing you for any lawful purpose, including marketing. |

| **INFORMATION ABOUT YOUR ACCOUNT** | |
|---|---|
| **Closing Your Account** | You may close your account at any time by sending a letter to the address shown on your billing statement or calling customer service. We may close your account at any time, for any reason. If your account is closed, you must stop using it. You must still pay the full amount you owe and this Agreement will remain in effect until you do. |
| **Collection Costs** | If we ask an attorney who is not our salaried employee to collect your account, we may charge you our collection costs. These include court costs and reasonable attorneys' fees. |
| **Credit Bureau Reporting** | We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be shown in your credit report. Tell us if you think we reported wrong information about you to a credit bureau. Write to us at P.O. Box 965005, Orlando, FL 32896-5005. Tell us what information is wrong and why you think it is wrong. If you have a copy of the credit report that includes the wrong information, send us a copy. |
| **Default** | You are in default if you make a late payment, do not follow any other term of this Agreement or become bankrupt or insolvent. If you default or upon your death, we may (a) request payment of the full amount due right away, (b) take legal action to collect the amounts owed, and/or (c) take any other action allowed. |
| **Disputed Amounts** | **The billing rights summary in this Agreement describes what to do if you think there is a mistake on your bill. If you send us correspondence about a disputed amount or payment, you must send it to the address for billing inquiries. We do not give up any rights under this Agreement if we accept a payment marked "payment in full" or given with any other conditions or limitations.** |
| **Unauthorized Use** | If your account is used without your consent, call us immediately at 1-844-373-4961. You will not be liable for unauthorized use on your account, but you will be responsible for all use by anyone you allow to use your account. |

| **IMPORTANT INFORMATION ABOUT THIS AGREEMENT** | |
|---|---|
| **Assignment** | We may sell, assign or transfer any or all of our rights or duties under this Agreement or your account, including our rights to payments. We do not have to give you prior notice of such action. Any person, company, or bank to whom we assign this Agreement shall be entitled to all of our rights under this Agreement. None of your rights or obligations shall be affected by such assignment. You may not sell, assign or transfer any of your rights or duties under this Agreement or your account. |
| **Enforceability** | If any part of this Agreement is found to be void or unenforceable, all other parts of this Agreement will still apply. |
| **Governing Law** | Except as provided in the Resolving a Dispute with Arbitration section, this Agreement and your account are governed by federal law and, to the extent state law applies, the laws of Utah without regard to its conflicts of law principles. This Agreement has been accepted by us in Utah. |
| **Waiver** | We may give up some of our rights under this Agreement. If we give up any of our rights in one situation, we do not give up the same right in another situation. |

## RESOLVING A DISPUTE WITH ARBITRATION

**PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**

1. **CLAIMS AND PARTIES.** If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you (including any other user of your account), and us (including our parents, affiliates, agents, employees, officers, and assignees, and PayPal, Inc. and its affiliates) that directly or indirectly arises from or relates to your account, your account Agreement or our relationship, except as noted below. In addition, any assignee, agent, or service provider of ours that collects amounts due on your account are intended beneficiaries of this Arbitration section and may enforce it in full (notwithstanding any state law to the contrary).
2. This Arbitration section broadly covers claims based upon contract, tort, consumer rights, fraud and other intentional torts, negligence, constitution, statute, regulation, ordinance, common law and equity and claims for money damages and injunctive or declaratory relief, even if they arose before this section took effect. You may not sell, assign or transfer a claim.
3. Examples of claims subject to arbitration are disputes about an account transaction, fees, charges or interest, the events leading up to the Agreement (such as any disclosures, advertisements, promotions or oral or written statements, warranties or representations made by us), an application for or denial of credit, any product or service provided by us or third parties in connection with the Agreement, credit reporting, benefit programs related to your account including any reward program, the collection of amounts due by our assignees, service providers, or agents and the manner of collection.

4. However, we will not require you to arbitrate any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court. Also, even if all parties have opted to litigate a claim in court, you or we may elect arbitration with respect to any claim made by a new party or any claim later asserted by a party in any related or unrelated lawsuit, including modifying an individual claim to assert a class, representative or multi-party claim. Arbitration may be requested at any time, even where there is a pending lawsuit, unless a trial has begun, or a final judgment entered.
5. Only a court will decide disputes about the validity, enforceability, coverage or scope of this Arbitration section or any part thereof. However, any dispute that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator to decide.
6. **NO CLASS ACTIONS.** IF EITHER YOU OR WE ELECT TO ARBITRATE A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT (A) TO PARTICIPATE IN A CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTION OR OTHER REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER, OR (B) TO JOIN OR CONSOLIDATE CLAIMS WITH CLAIMS OF ANY OTHER PERSONS EXCEPT ACCOUNTHOLDERS ON YOUR ACCOUNT. THUS, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT AN ACCOUNTHOLDER ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY ACCOUNTHOLDERS ON YOUR ACCOUNT MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.
7. **PROCEDURES.** The party who wants to arbitrate must notify the other party in writing. This notice can be given after the beginning of a lawsuit or in papers filed in the lawsuit. Otherwise, your notice must be sent to Synchrony Bank, Legal Operation, P.O. Box 29110, Shawnee Mission, KS 66201-5320, ATTN: ARBITRATION DEMAND. The party seeking arbitration must select either the American Arbitration Association (AAA), 120 Broadway, Floor 21, New York, NY 10271, www.adr.org, or JAMS, 620 Eighth Avenue, 34th Floor, New York, NY 10018, www.jamsadr.com, to administer the arbitration. If neither administrator can handle the dispute, a court with jurisdiction will appoint an arbitrator.
8. The arbitration administrator will appoint the arbitrator and will tell the parties what to do next. The arbitrator must be a lawyer with at least ten years of legal experience. The arbitrator must apply the same law, consistent with the Federal Arbitration Act (FAA), that would apply to an individual action in court, but may use different procedural rules. The arbitrator will apply the same statutes of limitation and privileges that a court would apply if the matter were pending in court.
9. The arbitrator may award any damages or other relief or remedies that would apply under applicable law to an individual action brought in court, including, without limitation, punitive damages (governed by the Constitutional standards employed by the courts) and injunctive, equitable and declaratory relief (but only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim). The parties will bear the fees and costs of their attorneys, witnesses and experts. However, the arbitrator will have the authority to award fees and costs of attorneys, witnesses and experts to the extent permitted by the Agreement, the administrator's rules or applicable law.
10. The arbitration will take place by phone or at a location reasonably convenient to you. If you ask, we will pay all the fees the administrator or arbitrator charges if you cannot obtain a waiver of fees from the administrator and are acting in good faith. We will always pay arbitration costs required by the administrator's rules or that are necessary for this Arbitration section to be enforced.
11. **GOVERNING LAW.** This Arbitration section is governed by the FAA. Utah law shall apply to the extent state law is relevant under the FAA, unless otherwise stated herein. The arbitrator's award will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award. The arbitration award and any judgment confirming it will apply only to the specific case and cannot be used in any other case except to enforce the award.
12. **SURVIVAL.** This Arbitration section shall survive the repayment of all amounts owed, the termination, cancellation or suspension of the Agreement or your account or credit privileges, any legal proceeding, and any bankruptcy by you, to the extent consistent with applicable bankruptcy law. If this Arbitration section conflicts with the applicable arbitration rules or the other provisions of the Agreement, this Arbitration section shall govern.
13. **SEVERABILITY.** If any portion of this Arbitration section is held to be invalid or unenforceable, the remaining portions shall nevertheless remain in force with the following two exceptions. First, if a determination is made that the "No Class Actions" provision is unenforceable, and that determination is not reversed on appeal, then this Arbitration section shall be void in its entirety. Second, if a court determines that a public injunctive relief claim may proceed notwithstanding the "No Class Actions" provision, and that determination is not reversed on appeal, then the public injunctive relief claim will be decided by a court, and any individual claims will be arbitrated. The parties will ask the court to stay the public injunctive relief claim until the other claims have been finally concluded.
14. **HOW TO REJECT ARBITRATION.** You may reject this Arbitration section. If you do that, a court will resolve any dispute or claim. To reject this section, send us a notice within 45 days after you open your account or we first provided you with your right to reject this section. The notice must include your name, address, account number, and personal signature, and must be mailed to Synchrony Bank, P.O. Box 965012, Orlando, FL 32896-5012. This is the only way you can reject this section. Rejecting this Arbitration section will not affect any other provision of the Agreement. It will also not affect any prior arbitration agreement or dispute resolution provision between you and us, which will remain in full force and effect. If you don't reject this Arbitration section, it will be effective as of the date of the Agreement and will supersede any prior arbitration agreement between you and us that would otherwise be applicable.

## OTHER IMPORTANT INFORMATION

This section of the agreement includes state notices, billing rights summary and rewards terms (if applicable) and is not required to be provided as part of the credit card agreement posted online or provided to the CFPB.